**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
APointer@LawyersFTP.com
PBuelna@LawyersFTP.com

Attorneys for Plaintiffs

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

7TH & CAMPBELL LP, a California limited partnership; MISTY CROSS and SHAWN JOHNSON,

Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; and DOES 1-50, inclusive.

Defendant(s).

Case No.:

**COMPLAINT FOR DAMAGES**
**(42 U.S.C. § 1983)**

1) **FOURTH AMENDMENT- UNREASONABLE SEARCH AND SEIZURE**
2) **FOURTH AMENDMENT- EXCESSIVE FORCE**
3) **NEGLIGENCE**
4) **TRESPASS**
5) **VANDALISM**
6) **BANE ACT**
7) **BATTERY**
8) **UNLAWFUL ARREST**
9) **RALPH ACT**

**JURY TRIAL DEMANDED**

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

**INTRODUCTION**

1. This lawsuit is about holding police and government accountable for the blatant violations of Plaintiffs' Constitutional rights, among others, in a violent, planned operation to execute a political agenda. It focuses on the May 21, 2026, San Francisco Police Department (SFPD) assault on a 79-unit, 100% affordable housing complex in West Oakland, *The Black Panther*. This complex also includes five commercial spaces being developed for cooperative, community ownership. The majority of the very-low-income residents of the building are black and formerly homeless and, in many cases, formerly incarcerated. The majority of the building staff is black. The majority of the depressed neighborhood is black. The primary co-owner and public face of the building is black, and, a former leader of the Black Panther Party who named the building.

2. Admittedly using unauthorized Wi-Fi taps and other illegal surveillance of *The Black Panther* over the month before, over 20 plainclothes SFPD officers—surreptitiously supported by Oakland police—swooped down on the building in unmarked cars and forcibly entered *The Black Panther* by smashing through its glass front doors. Marching like commandos into the building, they took over. They stormed up to the door of a fifth- floor apartment, entered it—without incident—ransacked it and claimed to have recovered items there connected to a San Francisco robbery of months before: a pair of shoes and a jacket.

3. No reasonable person can believe all of this planning and force had to do with a petty robbery in another jurisdiction. No reasonable person could believe this police operation was lawful. Therefore, this lawsuit seeks accountability and recompense from police and government for orchestrating and carrying out the illegal and violent operation. The Constitution does not permit police officers to turn an occupied residential community into the scene of a military-style, violent ransacking and vandalizing of the homes of innocent families simply because they claim to possess a

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

search warrant and are asked to wait a moment to confirm their identities for protection of the people inside.

**JURISDICTION**

4. This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in Oakland, California, which is within this judicial district.

5. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1367 over the state law claims, which are related to the federal claims in this action in that they form part of the same case or controversy under Article III of the Constitution of the Unites States of America.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to the action occurred in this district.

**PARTIES**

7. Plaintiff 7th & Campbell LP (the "LP") is a California registered Limited Partnership which owns *The Black Panther* Apartments. The Limited Partnership is composed of Oakland & the World Enterprises, Inc., a California 501(c)(3) organization, and McCormack Baron Salazar, a Missouri for-profit corporation. ELAINE BROWN (hereinafter "Ms. Brown") is a competent adult, a resident of California and a citizen of the United States. She is the Chief Executive Officer of Oakland & the World Enterprises, Inc. (hereinafter "OAW"), which is the Managing General Partner of the LP and Co-Owner of *The Black Panther* Apartments.

8. MISTY CROSS (hereinafter "Ms. Cross") is a competent adult, a resident of California and a citizen of the United States.

9. SHAWN JOHNSON (hereinafter "Mr. Johnson") is a competent adult, a resident of California and a citizen of the United States.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

10. Defendant CITY AND COUNTY OF SAN FRANCISCO (hereinafter "Defendant CITY") is, and at all times herein mentioned, a municipal corporation duly organized and existing under the laws of the State of California that operates the San Francisco Police Department.

11. Plaintiffs are ignorant of the true names and/or capacities of Defendants sued herein as Defendants DOES 1 through 50, inclusive, and therefore sues said Defendants by such fictitious names. Defendants DOES 1 through 50 are employees of Defendant CITY. Plaintiffs will amend this complaint to allege the true names and capacities of Defendants DOES 1 through 50 when ascertained. Plaintiffs believe and allege that each of Defendants DOES 1-50 is legally responsible and liable for the incident, injuries, and damages hereinafter set forth. Each of Defendants DOES 1 through 50 proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, and failure to intervene during an unlawful arrest, search, seizure and/or use of force. Each of Defendants DOES 1 through 50 is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiffs will seek leave to amend this complaint to name Defendants DOES 1 through 50 when ascertained.

12. In committing the acts and/or omissions alleged herein, Defendants DOES 1 through 50 acted under color of authority and/or color of law and within the course and scope of their employment as law enforcement officers for Defendant CITY.

13. Due to the acts and/or omissions alleged herein, Defendants DOES 1 through 50 acted as the agents, servants, employees, and/or joint participants of Defendant CITY and of one another in carrying out the conduct alleged herein.

14. Plaintiffs filed a timely government claim with Defendant CITY on May 29, 2026 which was rejected on June 30, 2026.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

## FACTUAL ALLEGATIONS

**A. The Black Panther Apartments and Its Residents**

15. The Black Panther Apartments ("BPA") is a 100% affordable housing project located in West Oakland, California. The development was established to provide housing to low- and extremely low-income residents, including people who have historically faced substantial barriers to obtaining housing.

16. Beginning in July 2024, BPA expressly welcomed formerly incarcerated individuals, except registered sex offenders, as well as other economically and socially marginalized individuals and families to apply for it 79 residential units. BPA ultimately received more than 7,000 applications.

17. BPA's residents include foreign-born families and a substantial number of Black residents, especially including single mothers and their young children. Many residents came to BPA after experiencing homelessness, living in shelters and vehicles. The residents therefore include a particularly vulnerable population but whose homes and personal privacy are entitled to the full protection of the Fourth Amendment.

18. In the months preceding May 21, 2026, multiple governmental agencies—including the Oakland Housing Department, Alameda County Housing Department, Oakland Housing Authority, California Department of Housing and Community Development, and Federal Home Loan Bank—made demands to conduct extraordinary site visits and inspections that included unnecessary requests to inspect residents' apartments and records.

19. BPA ownership rejected those inspection demands where they sought access to residents' private apartments or records without constitutionally adequate legal authority. BPA expressly raised concerns that such searches would violate residents' Fourth Amendment rights.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

20. Against this backdrop, BPA residents and management became increasingly concerned that the development and its residents were being subjected to unusual and disproportionate governmental scrutiny.

**B. Events Immediately Preceding the May 21, 2026, SFPD Operation**

21. Three days before the events described herein, on May 18, 2026, Oakland Department of Transportation ("DOT") Director Josh Rowan met with BPA residents concerning what residents believed was excessive and inconsistent issuance of parking citations to residents of the BPA.

22. Residents had petitioned to challenge the tickets and had openly expressed their belief that BPA residents were being targeted.

23. After promising to address residents' concerns, Director Rowan unexpectedly back-tracked from this promise, sending an email to Plaintiffs stating he had "uncovered" problems he could not discuss on his office cell phone and that he would not be able to return to the building. Not much later, he resigned from the DOT, after making scandalous public accusations against the Oakland City Administrator.

24. These circumstances are relevant to the broader context in which the May 21, 2026, SFPD operation occurred and to the Plaintiffs' allegations concerning the treatment of BPA and its residents and staff by governmental officials.

**C. San Francisco Police Surveillance and Arrest Near BPA**

25. On May 21, 2026, San Francisco Police Department ("SFPD") officers conducted an operation in the vicinity of BPA in connection with an alleged San Francisco robbery.

26. Minutes before SFPD forcibly entered the BPA, officers arrested an 18-year-old alleged robbery suspect, Jamil Butler ("Butler"), approximately one block from the building.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

27. The circumstances of the arrest were highly coordinated. Plainclothes officers arrived in unmarked vehicles, officers approached Butler from multiple directions, surrounded him, struck him with two cars and placed him under arrest.

28. The manner and timing of the arrest demonstrated that SFPD had located and taken the criminal robbery suspect into custody before entering BPA.

29. According to statements made by SFPD officers to BPA personnel, SFPD had maintained the building under surveillance for the last 30 days leading up to the raid.

30. Indeed, an SFPD Officer also admitted during the raid that over the previous month, SFPD had accessed and searched the internet servers of the BPA and private server of the resident in apartment 515 without their knowledge or consent or a warrant.

31. In particular, when BPA security Shawn Johnson was confronted by SFPD officers outside the building, officers told him that they had seen him open the building's front door numerous times "over the last month," and, therefore, knew that he had access to the building.

32. These facts are significant because they indicate that SFPD officers had conducted prior surveillance of BPA, its personnel and illegally searched its server before the May 21st operation.

**D. SFPD Demands Entry Without Presenting a Warrant**

33. Shortly after Butler was arrested, a large group of the SFPD officers approached BPA's entrance.

34. The officers were in plain clothes and had arrived in unmarked vehicles. They looked like gang members.

35. Throwing on dark vests, emblazoned on the back with the word "POLICE" in big block white letters, they ran toward the BPA front entrance, and immediately demanded entry into the building.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

36. BPA security Shawn Johnson was outside the front entrance when the officers demanded he open the door.

37. Mr. Johnson asked the officers to wait so that he could contact the building manager, Ms. Cross, who was on-site and available to speak with them.

38. Mr. Johnson also requested that the officers present a warrant authorizing their entry.

39. Rather than simply presenting the warrant, the officers physically confronted Mr. Johnson. A yet to be identified SFPD officer violently knocked Mr. Johnson's cell phone from his hand as he was talking to Ms. Cross, pushed him against a wall, and handcuffed him.

40. Mr. Johnson was detained and accused of "obstruction." That criminal charge was subsequently dismissed.

41. During this encounter, SFPD officers produced what appeared to be a sledgehammer and battering ram.

42. When the police approached the building's glass front doors and shouted to building personnel inside to "open up," building staff on the other side also requested that the officers produce a warrant.

43. One officer briefly threw a piece of paper up to the glass front door only to immediately take it down and put it into his pocket. The officer failed to provide sufficient time for anyone to read and/or review the piece of paper he hastily put up to the glass front door and then abruptly pocketed. The SFPD officers did not provide a copy of the requested warrant to any of the building personnel who were present at the front door.

**E. SFPD Used Excessive Force to Break Into the Building**

44. Approximately 20 SFPD officers gathered at the front entrance.

45. They snatched breaching weapons, including what appeared to be a sledgehammer and battering ram, from a car they had parked in front and positioned themselves.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

46. The officers shouted to building personnel inside: "Open up or we'll break down the door!"

47. The building occupants and personnel moved away from the entrance.

48. SFPD officers then began battering the building's glass front door with their breaching equipment.

49. Soon, the officers shattered the glass entrance and partially tore the door from its hinges.

50. Approximately eight officers then entered the lobby and proceeded toward the elevators.

51. The entry was accomplished through the use of substantial physical force against the building itself despite the repeated requests of building personnel that the officers identify their legal authority for entering the premises. The officers forced their entry despite being told the building's manager was on site and coming down the elevator to meet them.

52. The destruction caused by the entry left broken glass throughout the entrance area, creating a safety hazard for residents and visitors.

53. The physical destruction of the entrance also served as a continuing reminder to residents—many of whom were families with young children—of the violent manner in which law enforcement had entered their home.

**F. SFPD Forces Its Way to the Fifth Floor**

54. As the officers entered the building, BPA Resident Property Manager Ms. Cross arrived in the lobby.

55. Ms. Cross observed approximately eight male SFPD officers crowded into an elevator.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

56. Ms. Cross repeatedly demanded that the officers show her the judicial warrant authorizing their entry and search.

57. Rather than provide the warrant, the officers refused her request.

58. When Ms. Cross attempted to keep the elevator doors open while requesting the warrant, officers physically pushed her away from the elevator.

59. Ms. Cross nevertheless managed to enter the elevator with the officers because she was concerned that the officers were proceeding to a resident's apartment without management being able to determine the legal basis for the search or ensure the resident's safety.

60. The officers selected the fifth floor.

61. Ms. Cross continued to request that the officers provide the warrant.

62. The officers proceeded to apartment 515.

**G. The Search of Apartment 515**

63. Upon arriving at apartment 515, police banged on the door.

64. Ms. Cross informed the resident that he should open the door immediately because of the large number of police officers assembled outside and because she was concerned that the officers would otherwise use force against the resident or his apartment.

65. The officers knew that Jamil Butler was not inside apartment 515, as they had just arrested him. They never presented or, even, mentioned an arrest warrant for Butler.

66. Nevertheless, SFPD officers entered the apartment and conducted a destructive physical search purportedly looking for evidence related to Butler's alleged San Francisco robbery of months before.

67. Ms. Cross remained outside the apartment with the resident while multiple officers entered and searched the premises.

68. Ms. Cross again demanded to see the judicial warrant authorizing the search.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

69. The officers again refused to provide the warrant.

70. The search was conducted while the resident's property and belongings were ransacked.

71. The officers eventually exited the apartment carrying a paper bag holding a pair of shoes and a jacket.

72. Only after completing the search did the officers provide Ms. Cross with any documentation.

73. Critically, the document provided to Ms. Cross after the search appeared to have been completed by hand in the 5th floor hallway outside the resident's apartment after the officers had already entered and searched the apartment. The written document included the results of the search.

74. The circumstances surrounding the search warrant—including the basis and/or representations SFPD officers used to obtain it —are matters that Plaintiffs presently lack complete information concerning and that require discovery from SFPD, the City and County of San Francisco, and other involved agencies.

**H. There Was Never an Arrest Warrant for the Robbery Suspect**

75. When SFPD forcibly entered BPA and searched apartment 515, Butler was already in police custody.

76. Thus, the officers were not pursuing Butler into the building.

77. Butler was not fleeing into BPA.

78. Based upon the facts presently known to Plaintiffs, there was no exigent circumstance justifying officers' forced entrance into the building.

79. The search was for stolen items.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

80. The stated purpose of the search was to locate items connected to an alleged San Francisco robbery by Butler, who was already in custody.

81. Plaintiffs are further informed and believe that the robbery investigation involved events occurring in March and/or early May 2026, rather than a robbery in progress on May 21, 2026.

82. The circumstances therefore raise substantial questions concerning why such a large, heavily equipped police contingent from another jurisdiction was deployed to forcibly enter an occupied affordable-housing complex in West Oakland.

**I. The "Search Warrant"**

83. SFPD traveled into Oakland and forcibly entered the BPA, claiming to have a search warrant.

84. Plaintiffs presently lack the complete affidavit, warrant application, supporting declarations, communications, surveillance materials, and other records upon which the warrant was obtained.

85. Those materials are uniquely within the possession and control of SFPD and the City and County of San Francisco and are necessary to determine what facts were presented to the issuing judge, when they were presented, and whether the warrant actually authorized the manner and scope of the search conducted at BPA.

86. Plaintiffs therefore allege, upon information and belief and subject to discovery, that the search and seizure exceeded the lawful scope of any warrant that may have been actually issued and/or was otherwise executed unreasonably, in violation of the Fourth Amendment.

**J. The Treatment of BPA Personnel and Residents**

87. SFPD's conduct extended beyond the search of apartment 515.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

88. Mr. Johnson was physically assaulted, handcuffed, detained, and accused of obstruction after asking officers to simply identify their legal authority.

89. The bogus obstruction charge against Mr. Johnson was subsequently dismissed.

90. Resident Property Manager Ms. Cross was physically pushed by yet to be identified officers when she attempted to request officers present the search warrant.

91. Ms. Cross is substantially smaller than the male officers who physically pushed her away from the elevator.

92. SFPD officers also attempted to prevent a BPA resident from entering her own home after forcibly breaching the front door.

93. The resident explained that her disabled mother was waiting for her and that she needed to take something to her immediately.

94. The officers' conduct created fear and intimidation among residents, including families and children who were present in or attempting to access their homes.

**K. Oakland Police Department's Involvement**

95. Although the operation was initiated and principally conducted by SFPD, Oakland Police Department ("OPD") was involved in the events surrounding the operation.

96. Before the operation, SFPD notified OPD that it intended to conduct an investigation in the 1600 block of 7th Street that day, May 21, 2026.

97. According to a public statement by OPD, SFPD initially advised that it would not require OPD assistance.

98. OPD subsequently acknowledged that SFPD requested OPD assistance with "crowd-control" and that OPD "honored" that request.

99. The San Francisco and Oakland police unions issued a joint statement that characterized the SFPD assault on the BPA as a "coordinated operation."

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

100. The precise nature and extent of OPD's involvement—including communications between SFPD and OPD before, during, and after the operation, the identities and actions of OPD personnel present, and the extent to which OPD knew of, facilitated, assisted, monitored, or ratified SFPD's conduct—remain matters requiring discovery.

101. Plaintiffs therefore presently allege that OPD and the City of Oakland participated in, assisted with, facilitated, or subsequently ratified conduct that violated Plaintiffs' constitutional rights.

**L. Oakland's Failure to Meaningfully Investigate the Conduct**

102. Following the incident, BPA personnel attempted to report SFPD's conduct to OPD.

103. Ms. Cross and Ms. Brown, as an Owner of the BPA, went to OPD headquarters in Oakland to make a criminal complaint concerning the SFPD assault.

104. OPD personnel refused to accept the complaint in person and directed them to a website and telephone number.

105. Ms. Cross and Ms. Brown were subsequently informed that the telephone number provided would not accept the complaint.

106. Ms. Cross ultimately submitted a complaint through an email address provided by an OPD officer. The complaint subsequently disappeared and was not meaningfully pursued.

107. On May 23, 2026, OPD Lieutenant Christopher Cardona contacted Ms. Brown by telephone and requested she tell him her complaint about the SFPD operation, which he would record. Cardona also contacted Ms. Cross and asked for her statement, which was also recorded.

108. Cardona represented that he would prepare a report and that someone would follow up.

109. No follow-up occurred.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

110. When Ms. Brown requested the recording or transcript of the statement, OPD did not provide it.

111. On June 16, 2026, Ms. Brown received a telephone message from then-Acting OPD Chief Beere concerning the matter, stating he would have one of his Deputy Chiefs call her.

112. Shortly thereafter, Ms. Brown received a call from an individual identifying himself as an Acting Deputy Chief who stated that he had been directed by Chief Beere to contact her.

113. Rather than provide information concerning OPD's own involvement in the May 21 operation, the discussion was redirected, and he told her to contact SFPD's Internal Affairs Division.

114. On June 22, 2026, an OPD Internal Affairs intake technician contacted Ms. Brown concerning a purported "new complaint."

115. Ms. Brown requested that the representative follow up in writing. No written or other follow-up was received.

116. The foregoing conduct is relevant to Plaintiffs' claims concerning OPD's knowledge of the incident, its failure to adequately investigate complaints, and its subsequent response to the constitutional violations.

**M. The Significance of the Operation and Plaintiffs' Continuing Concerns**

117. The May 21, 2026, operation was not an isolated interaction with a single individual. It involved a large deployment of law enforcement officers to an occupied residential building, the forcible destruction of the building's principal entrance, the physical detention of building personnel, the physical displacement of the property manager, the search of BPA and the residents' internet server, the forced entry into and search of a resident's apartment, the seizure of personal property, initiation of a false criminal prosecution and the intimidation of residents.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

118. With no exigent hot pursuit circumstances, SFPD officers forcibly breached the building's entrance with violence, refused repeated requests to produce the purported judicial warrant and marched directly to a resident's apartment.

119. The brutal manner in which the search was conducted was particularly troubling because a baby and teenage girl live in that apartment.

120. The operation also occurred against the backdrop of approximately one month of asserted police surveillance of BPA and its internet server coupled with months of unusual governmental demands involving inspection of the property and its residents.

121. Plaintiffs do not presently possess all information necessary to determine the full purpose, planning, authorization, or coordination underlying the May 21 operation. Those facts are substantially within the possession and control of SFPD, OPD, the City and County of San Francisco, the City of Oakland, individual officers and other government entities.

122. Plaintiff 7th & Campbell therefore alleges, upon information and belief and subject to discovery, that the May 21 operation was the product of coordinated governmental decision-making and that the search of BPA was unreasonable, excessive, and undertaken without constitutionally sufficient justification. Plaintiffs Ms. Cross and Mr. Johnson also allege, upon information and belief and subject to discovery, that the May 21 operation was the product of coordinated governmental decision-making and that the seizure, detention, and in addition that the use of force against them was unreasonable, excessive, and undertaken without constitutionally sufficient justification.

123. Plaintiffs further allege that the participating agencies knew or should have known that forcibly entering an occupied residential development, refusing to produce claimed legal authority, detaining individuals who questioned the officers' authority, destroying property, and unlawfully searching a resident's home were serious constitutional violations.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

124. The resulting damage was not limited to physical property. The operation caused residents and building personnel to fear for their safety in their own homes, undermined their sense of security, and caused continuing distress from the manner in which law enforcement forcibly entered and occupied their residential building.

125. Plaintiffs seek redress for the unlawful searches, seizures, detentions, excessive force, destruction of property, and related constitutional violations committed by Defendants.

**DAMAGES**

126. As a direct and proximate result of each one of the Defendants' unlawful searches and seizures Plaintiff 7th & Campbell LP suffered financial losses including, but not limited to, destruction of property, as well as damage to its reputation as a highly awarded complex by various government and professional organizations, thereby having a negative effect on its ground floor commercial businesses and future affordable housing development, and a diminished sense of protection, safety and security of its residents.

127. As a direct and proximate result of each one of the Defendant's unlawful searches and seizures and use of excessive force, Plaintiffs Ms. Cross and Mr. Johnson suffered injuries, including but not limited to, emotional distress, fear, terror, anxiety, and a loss of sense of security, dignity, and pride as a United States Citizen.

128. As a direct and proximate result of each of the Defendant's acts and/or omissions as set forth above, Plaintiff 7th & Campbell LP sustained the following damages, past and future, among others:

a. Violation of constitutional and civil rights; and

b. All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988; and as otherwise allowed under California and United States statutes, codes, and common law.

129. As a direct and proximate result of each of the Defendants' acts and/or omissions as set forth above, Plaintiffs Cross and Johnson sustained the following injuries and damages, past and future, among others:

a. Pain and suffering, including emotional distress,

b. Violation of constitutional and civil rights; and

c. All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988; and as otherwise allowed under California and United States statutes, codes, and common law.

130. The conduct of Defendants was malicious, wanton, oppressive, and in reckless disregard for the rights and safety of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages against Defendant DOES 1-50.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Fourth Amendment – Unreasonable Search & Seizure under 42 U.S.C. § 1983)**
**(Plaintiff 7th & Campbell LP against Defendants DOES 1 through 50)**

131. Plaintiff 7th & Campbell LP hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

132. On information and belief, Defendants DOES 1 through 50's entry and search of BPA was done in an unlawful and unreasonable manner.

133. Unbeknownst to Plaintiff, SFPD electronically and physically surveilled BPA for a month before actually physically entering the complex. During that time, SFPD apparently unlawfully and unwarrantedly searched and examined the BPA's and Apartment 515's internet servers.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

134. Plaintiff has never given Defendant CITY or DOES 1 through 50, consent to access and/or search its internet server. Likewise, Plaintiff is unaware of any alleged "warrant" giving Defendant CITY legal authority to search or examine its server without its consent.

135. When the CITY's yet to be identified police stormed BPA there were no exigent circumstance lawfully permitting DOES 1 through 50 to violently break its glass front doors under a false façade of urgency.

136. Defendants DOES 1 through 50's entry and search of BPA was done in an unreasonable manner in that they failed to present a valid warrant or obtain permission to enter BPA. In addition, DOES 1 through 50 unlawfully physically assaulted BPA staff during its search all the while making BPA residents fear for their own safety and security under the claim of lawful authority.

137. As a result of their conduct, Defendants DOES 1 through 50 are liable for Plaintiff's injuries and/or damages.

138. Plaintiff is entitled to relief as set forth herein, including punitive damages against all individual Defendants.

WHEREFORE, Plaintiff prays for relief as herein set forth.

**SECOND CAUSE OF ACTION**
**(Fourth Amendment—Excessive Force under 42 U.S.C. § 1983)**
**(Plaintiffs Cross & Johnson against Defendants DOES 1 through 50)**

139. Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

140. Without warning or lawful justification, Defendants DOES 1-50 forcefully pushed Ms. Cross and Mr. Johnson.

141. Defendant DOES 1-50 used objectively unreasonable force under the circumstances, thereby violating Plaintiffs' constitutional rights under the Fourth Amendment.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

142. As a result of Defendants DOES 1-50's conduct, Plaintiffs Cross and Johnson were physically and emotionally injured. Their injuries were a direct and proximate result of Defendants DOES 1-50's unreasonable uses of force.

143. As a result of their conduct, Defendants DOES 1 through 50 are liable for Plaintiffs' injuries and/or damages.

WHEREFORE, Plaintiffs pray for relief as herein set forth.

**THIRD CAUSE OF ACTION**
**(Negligence)**
**(Plaintiffs against Defendants CITY and DOES 1 through 50)**

144. Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

145. At all times, Defendants DOES 1 through 50 owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

146. At all times, Defendants DOES 1 through 50 owed Plaintiffs the duty to act with reasonable care.

147. These general duties of reasonable care and due care owed to Plaintiffs by Defendants included but are not limited to the following specific obligations:

a. To refrain from employing excessive force;

b. To refrain from unreasonably searching and seizing;

c. To refrain from abusing the authority granted to them by law;

148. Defendants DOES 1-50, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

149. Defendants DOES 1-50's acts were done within the scope of their employment as police officers for Defendant CITY.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

150. Defendant CITY is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal Gov. Code § 815.2.

151. As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages and is entitled to relief as set forth herein.

WHEREFORE, Plaintiffs pray for relief as herein set forth.

**FOURTH CAUSE OF ACTION**
**(Trespass)**
**(Plaintiff 7th & Campbell LP against Defendants CITY and DOES 1 through 50)**

152. Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

153. Defendants DOES 1 through 50 did not have written, verbal or any other type of consent and/or license to enter the Plaintiff's private property and therefore their unlawful physical intrusion and destruction of property amounted to trespass.

154. Pursuant to Cal. Gov. Code § 815.2, Defendant CITY is vicariously liable for the violation of rights by its employees and agents.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(Vandalism)**
**(Plaintiff 7th & Campbell LP against Defendants CITY and DOES 1 through 50)**

155. Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

156. Defendants DOES 1 through 50 did not have written, verbal or any other type of consent and/or license to enter Plaintiff's private property and, therefore, their unlawful physical intrusion and destruction of Plaintiff's property amounted to vandalism.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

157. Pursuant to Cal. Gov. Code § 815.2, Defendant CITY is vicariously liable for the violation of rights by its employees and agents.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**(Violation of the Bane Act [Cal. Civ. Code § 52.1])**
**(Plaintiffs Cross and Johnson against Defendants CITY and DOES 1 through 50)**

158. Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

159. Plaintiffs bring their "Bane Act" claim individually for the direct violation of their own rights.

160. By their conduct described herein, Defendants DOES 1-50, acting in concert, as described above, violated Plaintiffs' rights under California Civil Code § 52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

d. The right to exercise free speech.

e. The right to be free from excessive force.

f. The right to be free from arrest without probable cause and detentions without reasonable suspicion.

g. The right to be free from unreasonable searches and seizures.

161. The threats, physical force, and coercive conduct employed by Defendants DOES 1-50 constituted the independent threats, intimidation, and coercion required by Civil Code § 52.1.

162. All of Defendants' violations of duties and rights were volitional, intentional acts, done with reckless disregard for Plaintiffs' rights; none was accidental or merely negligent.

163. Pursuant to Cal. Gov. Code § 815.2, Defendant CITY is vicariously liable for the violation of rights by its employees and agents.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

164. As a direct and proximate result of Defendants' violations of California Civil Code § 52.1 and of Plaintiffs' rights under the United States and California Constitutions, Plaintiffs sustained injuries and damages by all Defendants and is entitled to relief as set forth above, including punitive damages against all individual Defendants, and including all damages allowed by Cal. Civ. Code §§ 52, 52.1, and California law, not limited to costs, attorneys' fees, treble damages, and civil penalties.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**(Battery)**
**(Plaintiffs Cross and Johnson against Defendants CITY and DOES 1 through 50)**

165. Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

166. Defendants DOES 1-50's decision to intentionally shove Plaintiffs Cross and Johnson caused fear and harm to Plaintiffs and was done unreasonably and without justification.

167. Pursuant to Cal. Gov. Code § 815.2, Defendant CITY is vicariously liable for the violation of rights by its employees and agents.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**EIGTH CAUSE OF ACTION**
**(Unlawful Arrest)**
**(Plaintiff Johnson against Defendants CITY and DOES 1 through 50)**

168. Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

169. Defendants DOES 1-50's decision to arrest Plaintiff Johnson was done unreasonably and without reasonable suspicion or probable cause.

170. Pursuant to Cal. Gov. Code § 815.2, Defendant CITY is vicariously liable for the violation of rights by its employees and agents.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**NINTH CAUSE OF ACTION**
**(Violation of the Ralph Act (Cal. Civ. Code § 51.7))**
**(Plaintiffs Cross and Johnson against Defendants CITY and DOES 1 through 50)**

171. Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here

172. Defendants DOES 1-50 threatened and committed violent acts against Plaintiffs Cross and Johnson and these unlawful acts were motivated by the Plaintiffs' race. Defendants DOES 1-50's conduct harmed Plaintiffs, and Defendants DOES 1-50's conduct was a substantial factor in causing Plaintiffs' harm.

173. Pursuant to Cal. Gov. Code § 815.2, Defendant CITY is vicariously liable for the violation of rights by its employees and agents.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**JURY DEMAND**

174. Plaintiffs hereby demand a jury trial in this action.

**PRAYER**

WHEREFORE, Plaintiffs pray for relief as follows:

1. For general damages in a sum to be proven at trial;

2. For special damages, in a sum to be determined according to proof;

3. For punitive damages against the individual DOE Defendants according to proof;

4. For reasonable attorney's fees pursuant to 42 U.S.C. § 1988; the Bane Act and Ralph Act's fee provisions; and as otherwise allowed by California and/or federal law;

5. All other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

6. For the cost of suit herein incurred; and

7. For such other and further relief as the Court deems just and proper.

Dated: September 15, 2026

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE

/s/ *ADANTE D. POINTER*
ADANTE D. POINTER
PATRICK BUELNA
Attorneys for PLAINTIFFS

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607